Good morning. May it please the court. My name is Eitan Castle-Janich. I'm representing Deana Denham in this matter. For starters, I wanted to just mention Ms. Denham originally was alleging an onset date of October 1, 2006 because that is when she had reached the point where she could no longer work full time in her janitorial business and was working part time. However, it turned out that she in 2000 through December 2007 had continued even with her part time work had continued to earn just barely above substantial gainful activity level and therefore she is presumptively not disabled due to the level of her earnings. And for that reason, when the case was in district court, I amended her onset date to January 1, 2008. Her work had cut back so much that she was no longer even able to earn at the SGA level. Robert Chisholm So again, the new onset date is? Eitan Castle-Janich January 1, 2008. Denham's primary impairment is degenerative disc disease which causes pain. This is fundamentally a pain case. If Ms. Denham didn't have any pain, she'd be working today. It's a difficult matter for anyone other than the person who's experiencing the pain to figure out what level of pain is the person experiencing. There's a lot of dot connecting that has to be done. Under the Social Security Regulatory Scheme, the first step is there must be medical findings that support the presence of impairments that can reasonably be expected to cause the pain that the individual is experiencing. In this case, there are medical diagnoses of degenerative disc disease. Ms. Denham's main treating source, one of them was a physician assistant, Ms. Elam, who noted that she had very significantly impaired range of motion. Following an auto accident in late 2007, her condition got worse and she went to physical therapy. The physical therapist she saw, Ms. Boyle, also described just how bad off she was. She had an asymmetrical gait. Every step she took, it was obvious she was cringing because of the pain that she was expecting when she set her foot down for the next step. She tried doing the physical therapy for about a month, did a bunch of, I think it was four or five visits with an aerobic, walking in a pool, and that made her pain worse. That was the gentlest thing they could come up with for her and it worsened her pain and she stopped. There's evidence that shows that she's got conditions that can cause pain. The question is, how limited is she? Really, the only way to tell that is by asking her. Well, that's not really the case, is it, counsel? I mean, there is a certain level of, don't just go on the subjective aspects of it. You've got to have some objective facts and at least as I understand it, correct me if I'm wrong, part of the problem we have here is that none of the physicians that were credited by the ALJ said that they admitted her pain, said it was a problem, but she was able to continue to work, continue to be able to do a lot of other things and under the five-step process, it didn't add up. Now, all of us can say, well, boy, that's a really tough standard, but that is in fact the standard we deal with, isn't it? Well, let me break that down a little bit. First of all, we're not dealing with a situation where there are physicians or treatment providers who are treating her for her degenerative disc disease who actually came out and said she can do light work, she can do sedentary work, she can do no work, she can do any kind of work. Nobody gave an opinion about her functional ability in the terminology that Social Security looks for. So, certainly... And neither did anybody say she couldn't do anything. That's correct. They didn't say they could and they didn't say she couldn't. So basically, it boils down to her subjective statement and the evidence that is there about what she was able to continue to do during her life on a personal basis, on a work basis, and ultimately on step five, what she was capable of doing. Isn't that correct? That is correct. And that's why this is a step four, step five case. For that reason, because nobody came... Obviously, if somebody had come out and said she could work, I wouldn't be standing here today. And if somebody had come out and said she could not work, it would be a stronger case, it would be a more clear case. But for one thing, doctors can't always tell whether or not a person can work and they don't always write their opinions according to what Social Security would like to see. What we have here, the ALJ, in the absence of any kind of clear opinion from doctors about what she could do, the ALJ relied on the opinions of two, what he called medical consultants, the state agency medical consultants. Well, one of them was not a doctor. In fact, the person who wrote the evaluation, who completed the assessment form, is not a doctor, has no medical credentials at all. That was also true on your side as well, wasn't it? You had some competing non-doctors that evaluated her. Ah, there's a difference. The people who were treating her, so in other words, if a physical therapist, Ms. Boyle, was treating her and described she's trained, she's a trained physical therapist who can observe and describe the person's limitations on... Admittedly, but she's not a doctor, right? She's not a doctor. So basically, you've got, I'm sure, very earnest, probably really good looking people on both sides that were saying that she could or couldn't do whatever, but they're not medical doctors. And so you get back again to her subjective statements and ultimately step five. We do, but there is a big difference between what the state agency non-medical assessor, her expertise. She never treated, she never examined, she never met Ms. Denham, and she has no medical training that we're aware of, as opposed to Ms. Boyle and Ms. Elam were actually treating her. Ms. Elam was prescribing medication to her, including narcotic pain medication, which presumably she wouldn't have prescribed if she didn't believe that Ms. Denham was experiencing pain. The medical consultant, once again, the record is there's no evidence that she had any medical training whatsoever, none. Now, the other issue with... Now, her opinion was Ms. Bacchus, this is a Ms. Bacchus, her assessment form, an actual doctor reviewed it and he stamped his name on a form saying, I affirm it. Two problems with that, no analysis by him, none whatsoever, not even a word. That's the first problem. Second problem is, neither of them looked at any evidence beyond 2007, which is actually before the amended alleged onset date, because she actually did get worse in November of 07. Neither of them reviewed any of the evidence from November of 07 on, not a scrap of it. For that reason, their opinion really is not entitled to any weight, yet it was given significant weight. What evidence did your... Of course, your client bears the burden, right? Right. What would you say is the strongest evidence that your client has backing up her subjective claims of pain? I have no doubt she suffered pain, I have none at all, but again, under the rules, she has a burden of proof to show by competent medical evidence that she has a condition that has resulted in her being unable to work. What evidence do you have that that, in fact, was the case? The two strongest pieces of evidence are the assessments from Ms. Boyle... Who's not a doctor. Who's not a doctor, a physical therapist, and the assessment from her treating physician assistant, Ms. Elam, also not a doctor. Dr. Dumitrescu documented it, prescribed medication for it, but I think that Ms. Elam was actually more actively involved in treatment, and Dr. Dumitrescu didn't... There's no evidence in the file of her detailing her examination findings, so I think, really, Ms. Elam's opinion is stronger because she described in detail her range of motion findings. This visual inspection of the cervical spine, she has an anterior tilt, accentuated kyphotic curve, guarded today, range of motion, she describes her range of motion restrictions. That's very important evidence, and then the fact that she prescribed, she treated, she was treating her, and after treating her, prescribed pain medication to her for the obvious pain problem she was having. You're right. I'd love it if she'd gone to a real, more real doctor, and she did. Ironically, there was additional evidence that showed worsening after the ALJ's decision, where she was actually going to a doctor, and her edema was better documented at that point, which is one more reason she couldn't be on her feet. I mean, basically, what you're saying is that former Chief Justice Rehnquist should have been given a Social Security disability payment. Absolutely. Because he had very severe back pain. No, because it becomes... Absolutely not. I've had severe back pain. I can type a brief lying on my back. Well, we could discuss disability retirement for Chief Justice Rehnquist for a long time with different views, but on your case, let me ask this. You submitted additional evidence to the Appeals Council, didn't you? Yes. Now, why should that make a difference to the conclusion that the ALJ reached? The reason it should have made a difference is because it documented her edema, which is one more issue of why she couldn't be on her feet. It helped to explain one more reason why she couldn't be on her feet for this. Once again, we're at step five in this case. The ALJ said she could be on her feet for an hour at a time, six hours in an eight-hour day. There's no evidence supporting that. There's no medical evidence supporting that. It's just not realistic at all, and the additional evidence helps to show that that's true. Can I just ask directly, what is it about Ms. Boyle's testimony or the documentary evidence from Ms. Boyle or Ms. Elam that supports your client's position that she can't perform sedentary work? I understand she can't perform janitorial work anymore, but what about the sedentary work? Sedentary work, and once again, the judge didn't get to that point, but the ALJ didn't, but the issue is when she was sitting, because of the pain in her back, she was having to support herself on her arms on the chair. She couldn't even sit in a regular chair with her arms by her side or her arms in front of her. She had to support her back with her arm to keep the pain from being excruciating, and she had to lie down periodically to relieve pain. In order to do sedentary work, you've got to be able to sit for at least six hours in an eight-hour day. In order to do light work, you've got to be able to stand or walk for six hours in an eight-hour day. She couldn't have done either of those, because when the pain would get bad, she'd have no choice but to lie down. Back to your point about the daily activities, which you do have to look at, yes, she could clean her house for 30 minutes, 45 minutes, and then she's down. She's lying down. That's it. She's done for the day. I just want to point out, because this is a credibility case, you have to look at the reasons the ALJ gave for rejecting her credibility. I go through those point by point in both of my briefs. Not a single one of his reasons is convincing, and that is the legal standard here. His reasons have to be convincing, and none of them are. I would like to reserve some time for rebuttal. Please do. Thank you. We'll hear from the Commissioner. Good morning. Jordan Dillon Goddard, appearing on behalf of the Commissioner of Social Security. Ms. Denham has a number of mild to moderate impairments that are common. However, none of them, even when considered in combination, are disabling. Opposing counsel says that this is a credibility case, and for the most part, he's right. She has no objective evidence to support her claims. She's relying entirely on her assertion that her pain is so bad that she cannot work. However, the administrative law judge properly analyzed these claims and rejected them. The main basis was that they were inconsistent with her activities of daily living, which included working at a higher exertion level than the light level. That's an important point. Counsel points out that Ms. Denham was only able to work for short periods of time. However, as the vocational expert explained at the hearing, she was doing work at the medium to heavy exertion level. It's understandable that someone with her impairments couldn't continue to do medium to heavy work on a full-time basis, and the administrative law judge found that she couldn't do that kind of work. Well, what does that mean? From that, you can infer that you can do continuous light work for eight hours? From that alone, I wouldn't say that's the only thing. She's also engaged in just significant regular daily activities, including child care. She testified that she watches her roommate's six-month-old infant, in addition to having her own seven-year-old child that she takes care of. The claim that she does these spurts of housework in short periods of time and then is laid out for long periods of the day really is not consistent with the type of work she was doing, specifically caring for a six-month-old infant while the mother was away for the day. The mother was a full-time student and relied on Ms. Denham to take care of her six-month-old child. And there's no indication in the record whatsoever that her care was deficient or anything of that nature. Counsel, on page eight of the ALJ's decision at step five, after considering the residual functional capacity, giving some credibility to Ms. Denham's physical therapist and the physician's assistant, the vocational expert listed a very large number of jobs that would be available in the national economy. Is that the strongest point from the commissioner's view? Whatever quibbling you may have about steps three, four, that on five she just loses. Is that your position? Yes, Your Honor. I think that's a fair characterization. She's not just limited to sedentary work but light work. And as our regulations explain, if we find that you're capable of doing a certain level of work, that includes the work below it, typically, unless there's specific restrictions that would be incompatible, such as a sitting restriction, which isn't in place here. So we have most of the world of light duty work, such as office work, as was pointed out, as well as sedentary work as well. So yes, there appear to be quite a few jobs. And so even if there were some additional restrictions the court felt were not fully accounted for, the range of jobs that we have here is so robust that I think that under the Sanders standard of harmless error or the Molina standard, that I think this court would have to conclude that on a more probable than not basis, there is no harm done. If, in fact, there is any error. Changing the subject a little bit, I gather your position is not only does the additional evidence presented to the Appeals Council not affect the ALJ decision, but it shouldn't be reviewed at all. Is that your position? Well, we concede that the recent case of Bruce does appear to give the court authority to consider it in totality. I'll acknowledge that there may be some gray area in the case law still around this. But I think that if it's precluded, obviously, it can't undermine the Commissioner's final decision. But even if the court looks at it, I believe this evidence actually strengthens the ALJ's final decision. There are a number of MRIs and other imaging scans of her spine, which is her primary impairment here that she's claiming disability from. And every one of them uses the word either mild or minimal in describing the degree of changes. And the ALJ actually noted the lack of objective evidence. In fact, in front of him, he had similar findings. And these updated findings just confirmed that the degenerative changes in her back were, I think the word minimal is what she used most frequently in these new records. And that would just confirm that her back impairment is not of the severity to prevent her from maintaining light exertion work. The counsel also mentioned some edema in the record. There are a couple of mentions where she went in, and edema being swelling. She had some swelling in the legs. But her doctor gave her a common diuretic and told her to get more exercise. And then there's no more mention of it. So it really appears to be a transient condition that was taken care of with a common diuretic. And in fact, I think it's notable that her doctor didn't say, you need to lay down more, but you need to exercise more. That's what would be good for the swelling in your legs. Which is consistent with the physical therapy notes, which say that she's missed more than half of her sessions. And then she discontinued, indicating that the doctors and her therapist thought that she should be doing more physical activity to improve her condition, not laying down more. And she just wasn't following through with that. And so it's not a surprise that she was complaining of pain, because she just wasn't doing these strengthening exercises that everyone seems to say would have made a real difference for her. Apparently, I think she probably still could do these. These are simple strengthening physical therapy exercises that she hasn't followed through on. And the case law is very strong on this point. It's proper for an administrative law judge to infer from a failure to follow through on treatment, that your pain isn't as bad as you're saying, unless there's some other reason given. And here, we've never been given any reason for her decision to miss more than half of her physical therapy, and then just simply stop attending without explanation. So it's a proper inference to draw that her pain isn't quite as bad as she was alleging it to be. Or else you'd expect her to follow through on some of these exercises that all of her medical providers are telling her will improve your condition. If there's nothing more, I thank you for your time. Thank you very much for your argument. We'll hear rebuttal now from counsel for Ms. Denham. There are a couple of things I wanted to address. First, the big issue here is not whether or not there's a pile of jobs. The question is, what is Ms. Denham's residual functional capacity? Because the jobs that the ALJ came up with were based on his RFC, which was made up out of thin air. This woman cannot stand for six hours in an eight-hour day. There's no medical evidence supporting such a RFC finding. With regard to the new evidence at the Appeals Council, in addition to the edema, in addition to the evidence from her treating physician, Dr. Green, that she was being prescribed narcotic pain medication for her ongoing pain, which you would see at every visit, she also went to a mental health therapist, Victoria Davis, who described her mental health problems in much more detail than they had previously been seen as described by Dr. Nimes, and rated her GAF at 50. This is other additional evidence not considered by the ALJ. Back to the mental health evidence, Dr. Nimes wrote a report that said, I don't think she's disabled by her mental illness. At that time, he rated her as having a number of moderate limitations in a number of significant areas. The ALJ completely disregarded all of those moderate limitations, but instead said, well, Dr. Nimes said she's not disabled. I'm going to give way to him, but Dr. Nimes was not stating an opinion on her overall functioning or on her back. He's a psychologist. As far as stopping to attend physical therapy without explanation, she had an explanation. The physical therapist documented the explanation. She couldn't even do the aerobic walking in the pool without her pain getting worse. So this isn't somebody who went, it was helping, and just arbitrarily stopped. It was hurting her, and she's got a 9th grade, 10th grade education. It hurt. That's all she knew was hurting. How do you explain the statement by the physical therapist that it was a recommendation that his or her understanding of the fact that your client couldn't do it because of pain? Ideally, they always are going to want, I mean, that's one of the things. What does a physical therapist do? They try to get you to do more. That's their whole goal. The goal was unsuccessful with her because she wasn't just injured from a car accident. There's one of the notes that says, she's got this preexisting condition. I don't know that we'll be able to get her functional because of the condition of her spine, the preexisting condition. She didn't show up for appointments. She stopped showing up when it was just painful to go to them. Is that what she told him? Yes, and that's what's documented. That's what Ms. Boyle documented. She couldn't even do the aerobic walking in the pool without her, it made her pain worse every time. Thank you very much for your presentation. Unless my colleagues have any questions, the case just argued is submitted and we stand in recess for the day and the week.
judges: Tashima, Smith, Christen